WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Candace Rae Ventura,<br><br>Defendant. | No. CR-15-01198-TUC-JGZ (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Defendant's Motion to Suppress Evidence for Lack of Reasonable Suspicion (Doc. 41). The Government has filed its response. Govt.'s Response to Def.'s Mot. to Suppress Evidence for Lack of Reasonable Suspicion (Doc. 42). Defendant replied (Doc. 46). Defendant is charged with four (4) counts of transportation of illegal aliens for profit in violation of Title 8, United States Code, Section 1324. Indictment (Doc. 17) at 1–3. Defendant Candace Rae Ventura argues that agents lacked reasonable suspicion to stop her vehicle, and as such seeks suppression of all evidence obtained as a result thereof. *See* Def.'s Mot. to Suppress Evidence for Lack of Reasonable Suspicion (Doc. 41).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for

an evidentiary hearing and a report and recommendation. On March 9, 2016, an evidentiary hearing was held before Magistrate Judge Macdonald, and the matter taken under advisement. Minute Entry 3/9/2019 (Doc. 49). The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   *A. Background*

At approximately 8:30 p.m. on June 7, 2015, United States Border Patrol Agent Carlos Ortiz was on duty and driving out State Route 86 to the Sells, Arizona area and then turning South on Federal Route 19 to his area of responsibility. Hr'g Tr. 3/9/2016 (Doc. 55) 10:10–13:19; *see also* Govt's Exh. "1." Agent Ortiz will have been a Border Patrol agent for eight (8) years in October of 2016. Hr'g Tr. 3/9/2016 (Doc. 55) 5:10–12. He is currently assigned as a field agent working in the area of responsibility for both Casa Grande and Three Points stations. *Id.* at 6:14–20, 29:5–30:19. The area of responsibility for both stations is the same. *Id.* at 6:14–20, 7:2–9. Agent Ortiz further testified that most of the people living in his area of responsibility are Native Americans living on the Tohono O'odham reservation. *Id.* at 30:23–31:8.

Agent Ortiz described his field agent assignment as "first and foremost [to] interdict terrorists and human/narcotic smuggling[.]" *Id.* at 6:21–7:1, 7:19–8:10. He has also, at times, had specialized assignments with Border Patrol including the ATV unit and mobile surveillance unit. Hr'g Tr. 3/9/2016 (Doc. 55) 7:12–18. Agent Ortiz has also undergone post-academy training regarding the performance of vehicle stops and what

- 2 -

indicators to look for during those stops, as well as how to use the immigration laws. *Id.* at 5:22–6:13, 8:12–9:9. Agent Oritz testified that his shift started at approximately 6:00 p.m. and ended at 2:00 a.m. on the date in question. *Id.* at 10:10–18.

Agent Ortiz described his Federal Route ("FR") 19 as a two-lane, paved road, with a speed limit of fifty-five (55) miles per hour. *Id.* at 14:5–18, 19:11–13, 45:16–23. Agent Ortiz further testified that the Border Patrol agents tend to patrol along the border and stay along the dirt roads that branch off from FR 19. *Id.* at 13:20–14:4. At Mile Marker 23, there is a sign on the southbound lane, that the area is private and restricted for the Tohono O'odham Nation. Hr'g Tr. 3/9/2016 (Doc. 55) 14:19–15:1, 38:15–23, 40:18–24. Agent Ortiz agreed that there are groupings of homes located along FR 19. *Id.* at 31:17–33:22. Agent Ortiz also testified that in the time that he has patrolled this area, he has become familiar with the vehicles owned and used by the people who live in the area. *Id.* at 15:2–5.

### B. *Initial Sighting*

Agent Ortiz testified that on the date in question, at about 8:30 p.m., he saw a 1996 Dodge Caravan at approximately milepost 8. Hr'g Tr. 3/9/2016 (Doc. 55) 15:6–10, 45:10–15, 47:4–7, 63:8–10. Agent Ortiz was driving southbound on FR 19 and the Dodge Caravan was traveling north. *Id.* at 15:11–15. Initially, the Dodge Caravan caught Agent Ortiz's attention because it was not a vehicle that he recognized. *Id.* at 15:16–25.

After the Dodge Caravan caught Agent Ortiz's eye, he pulled to the side of the road and made a U-turn back onto FR 19 heading northbound. *Id.* at 17:25–10, 48:18–

- 3 -

19.  Agent Ortiz testified that once he was traveling northbound, he observed the Dodge Caravan turn on its turn indicator, but passed a couple of opportunities to turn off the road. *Id.* at 18:11–21.  Agent Ortiz further testified that when he came up behind the vehicle, it came to a stop in the middle of the road.  Hr'g Tr. 3/9/2016 (Doc. 55) 18:22–19:3, 48:20–24.  At this point, the Dodge Caravan attempted to execute a U-turn; however, the narrow roadway required a multi-point turn.  *Id.* at 19:4–10, 48:25–49:4.  Once the Dodge Caravan was turned back southbound, it turned right down a dirt road to the first house it came to.  *Id.* at 19:14–20:7, 49:7–10.  Agent Ortiz also made a U-turn and observed the Dodge Caravan turn into the first house.  *Id.* at 19:17–20:4, 49:11–12.

Agent Ortiz described the area as remote and generally with few vehicles on the road.  *Id.* at 16:1–10.  Agent Ortiz testified that the road sees the most traffic early in the morning and then around 4:00 or 5:00 p.m. when people are coming home.  Hr'g Tr. 3/9/2016 (Doc. 55) at 16:5–18.  Agent Ortiz further testified that at approximately 8:30 p.m., there were very few cars on the road.  *Id.* at 16:1–25.  Agent Ortiz also testified that FR 19 is a high traffic area for narcotics and alien smuggling.  *Id.* at 17:20–24, 60:19–21.  Agent Ortiz testified that FR 19, also known as San Miguel Road near the border, is the only paved road that runs from the border to central Arizona in the area of southern Arizona which is his area of responsibility.  *Id.* at 28:9–22.  Agent Ortiz testified that he has previously interdicted loads of drugs or aliens on FR 19.  *Id.* at 17:1–10.  Agent Ortiz further testified that the agents he works with in the area have also interdicted loads of drug and aliens on FR 19.  *Id.* at 17:11–13.  Prior to before beginning his shift, Agent Ortiz participates in muster (briefing) and receives intelligence from other agents.  Hr'g

- 4 -

Tr. 3/9/2016 (Doc. 55) 17:14–19, 37:10–12.

### C.     *Additional Observation*

Agent Ortiz parked along the dirt road, outside of the fence line, where he could observe the Dodge Caravan. *Id.* at 20:13–18, 49:13–14. Agent Ortiz further testified that he observed the Dodge Caravan park at the house, but no one exited the vehicle immediately. *Id.* at 20:5–12. After approximately one (1) minute, Agent Ortiz observed the driver exit the Dodge Caravan and then knocked on the front door of the house. *Id.* at 20:8–23, 49:15–50:4. Agent Ortiz observed an occupant answer the door and have a conversation with the driver of the Dodge Caravan. Hr'g Tr. 3/9/2016 (Doc. 55) 20:24–21:4. The two conversed for a couple of minutes, after which the driver returned to her vehicle. *Id.* at 21:2–8.

Agent Ortiz testified that he noticed that the license plate on the Dodge Caravan was clean. *Id.* at 21:16–20. Additionally, the letter number combination indicated that it was a newer plate. *Id.* at 21:21–22:25. Agent Ortiz further testified that when he called the plate into the Tucson sector communications dispatch, it returned that the vehicle was registered to a post office box in Sells, Arizona. Hr'g Tr. 3/9/2016 (Doc. 55) 21:9–15, 23:1–8, 61:3–8. Agent Ortiz testified that upon receiving that information, a fellow agent called Agent Ortiz and advised that he had seen the 1996 Dodge Caravan traveling south about an hour previously. Hr'g Tr. 3/9/2016 (Doc. 55) 23:10–19. The other agent also reported to Agent Ortiz that he had run a license plate on another vehicle that had come back with the same registered owner. *Id.* Agent Ortiz testified that he found it significant that the 1996 Dodge Caravan had been observed traveling south within approximately

one hour of his encounter with it. *Id.* at 23:20–24:3. Agent Ortiz stated that he found it significant because in his experience drug smuggling organizations will use the area because access is restricted, load the vehicle with people or narcotics, and then try to retrieve the vehicle when Border Patrol is "not paying attention." *Id.* Agent Ortiz further testified that the new license plate on an older vehicle was significant because drug and human smugglers will purchase, or have someone purchase, an older vehicle and then register it for use in the illegal activity. *Id.* at 24:4–23.

### D.     *The Stop*

Agent Ortiz testified that once the driver returned to the Dodge Caravan, they pulled out back onto the dirt road and began driving back to FR 19. Hr'g Tr. 3/9/2016 (Doc. 55) 25:1–6, 59:19–23. At that point, Agent Ortiz pulled behind the vehicle and activated his emergency lights. *Id.* at 25:7–10, 59:24–60:5. The vehicle stopped without incident. *Id.* at 25:10–11. Agent Ortiz approached the vehicle on the passenger's side, where two individuals were attempting to exit the vehicle through the passenger's side sliding door. *Id.* at 26:2–7. Agent Ortiz testified that he announced himself as a Border Patrol agent and directed the individuals to stop in both English and Spanish. *Id.* at 26:8–11. The individuals followed Agent Ortiz's instruction to stop, and Agent Ortiz had another agent assist him to keep the individuals in the vehicle. Hr'g Tr. 3/9/2016 (Doc. 55) 26:12–18. Agent Ortiz testified that he approached the driver and asked her to remove the vehicle's keys. *Id.* at 26:14–18. Agent Ortiz identified the driver of the Dodge Caravan as Defendant Candace Rae Ventura. *Id.* at 26:19–27:3. Defendant denied knowing the two individuals in the back of the minivan to Agent Ortiz. *Id.* at

- 6 -

27:5–9.

Agent Ortiz testified that he stopped the Dodge Caravan because, in light of the events up to that point, he wanted to investigate the possibility of narcotic or human smuggling taking place in the vehicle. *Id.* at 25:12–17. Agent Ortiz further testified that he had received a tip earlier in the evening regarding a potential narcotics load, but did not remember any specifics. *Id.* at 25:18–26:1, 42:17–43:10.

### E. Investigator Charlie Gallegos

Charlie Gallegos, a private investigator, testified that on February 16, 2016, he traveled to FR 19 and photograph the roadway and area around mile marker 8. Hr'g Tr. 3/9/2016 (Doc. 55) 69:17–70:13. Mr. Gallego described a housing development south of mile marker 16, on the west side of FR 19. *Id.* at 70:25–72:19. Mr. Gallegos further testified that the house at which Defendant stopped was the one closes to the roadway, but that there were additional houses further down the dirt road. *Id.* at 75:25–76:12. Mr. Gallegos also testified that there were chaparral bushes along the fence line of the house. *Id.* at 76:13–15. Mr. Gallegos agreed that the foliage was probably somewhat different in June and February. *Id.* at 16–25.

### F. Material Witness Testimony

Jose Manuel Rosales-Lopez provided deposition testimony on July 10, 2015. Hr'g Tr. 3/9/2016 (Doc. 55)80:19–81:5. Mr. Rosales-Lopez testified that he was lying on the seat and other individuals in the vehicle were lying on the floor. As such, his testimony did not provide any significant information regarding the events of June 7, 2015.

- 7 -

## II. ANALYSIS

Defendant seeks suppression in this case, because "the border patrol agent had a hunch and followed the hunch." Def.'s Mot. to Suppress (Doc. 41) at 6. Defendant further asserts that "the factors allegedly relied upon provide no objectively reasonable totality of the circumstances which indicate that a crime had been committed and that Ms. Ventura had committed a crime." *Id.*

### A. Search and Seizure—In General

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted). "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause." *Id.* at 8, 109 S.Ct. at 1585 (internal citations omitted). "Officers on roving border patrols . . . may conduct 'brief investigatory stops' without violating the Fourth Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (citations omitted).

- 8 -

### *B. Reasonable Suspicion*

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "The reasonable-suspicion standard is not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078. Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744) (citations and internal quotation marks omitted).

When making a reasonable-suspicion determination, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (citations omitted); *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). In so doing, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078. Moreover, what may seem to be innocuous conduct when viewed in isolation may be appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51; *see also Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in isolation but

instead to view them in the totality of the circumstances."). Furthermore, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 U.S. at 277) (alterations in original).

"In the context of border patrol stops, the totality of the circumstances may include characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle." *Valdes-Vega*, 738 F.3d at 1079 (citing *United States v. Bignoni-Ponce*, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607(1975)). "Not all of these factors must be present or highly probative in every case to justify reasonable suspicion[,] . . . [a]nd the facts must be filtered through the lens of the agents' training and experience." *Valdes-Vega*, 738 F.3d at 1079 (citations omitted).

Here, Agent Ortiz is a seven and one half (7 1/2) year veteran of Border Patrol Hr'g Tr. 3/9/2016 (Doc. 55) 5:10–12. Agent Ortiz testified that he was driving southbound on FR 19 when he saw a 1996 Dodge Caravan traveling north at approximately milepost 8. *Id.* at 15:6–15, 45:10–15, 47:4–7, 63:8–10. Agent Ortiz further testified that he did not recognize the Dodge Caravan, despite being generally familiar with the vehicles owned and used by the people who live in the area. *Id.* at 15:2–25. Additionally, Agent Ortiz knew FR 19 to be a high traffic area for narcotics and alien smuggling. *Id.* at 17:20–24, 60:19–21. Agent Ortiz testified that he performed a U-turn and began traveling north on FR 19 in the same direction as the Dodge Caravan. *Id.* at

17:25–10, 48:18–19.  Agent Ortiz further testified that he observed the Dodge Caravan put on its turn indicator, pass a couple of opportunities to turn off the road, then come to a stop in the middle of the road.  Hr'g Tr. 3/9/2016 (Doc. 55) 18:11–19:3, 48:20–24. Agent Ortiz testified that the Dodge Caravan attempted to execute a U-turn, which resulted in a multi-point turn, to travel southbound, after which it turned right down a dirt road to the first house it came to.  *Id.* at 19:4–20:7, 48:25–49:10.  Agent Ortiz made a U-turn and followed the Dodge Caravan, observing it as it stopped at the house.  *Id.* at 19:17–20:18, 49:11–14.  Agent Ortiz testified that no one exited the Dodge Caravan for approximately one (1) minute after the vehicle stopped at the house.  *Id.* at 20:5–23, 49:15–50:4.  The driver eventually exited the vehicle, knocked on the front door of the house, and spoke with an occupant for a couple of minutes, after which the driver returned to her vehicle.  *Id.* at 20:8–21:8, 49:15–50:4.

Agent Ortiz that while he was behind the Dodge Caravan and subsequently parked observing it, he noticed that the license plate was clean with a letter number combination indicating a newer plate.  Hr'g Tr. 3/9/2016 (Doc. 55) 21:16–22:25.  Agent Ortiz testified that he called the plate into the Tucson sector communications dispatch, which returned that the vehicle was registered to a post office box in Sells, Arizona.  *Id.* at 21:9–15, 23:1–8, 61:3–8.  Agent Ortiz further testified that after this information was transmitted, a fellow agent contacted him and advised that he had seen the 1996 Dodge Caravan traveling south about an hour previously.  *Id.* at 23:10–19.  Agent Ortiz testified that he found the newer license plate on an older vehicle significant, because in his experience drug and human smugglers will purchase an older vehicle and then register it for use in

- 11 -

the illegal activity. *Id.* at 24:4–23. Furthermore, Agent Ortiz also testified that in his experience, drug smuggling organizations will use the area around FR 19 to load a vehicle with people or narcotics because access to the area is restricted, and then the organization will attempt to retrieve the vehicle when Border Patrol is "not paying attention." *Id.* at 23:20–24:3.

The Court finds Agent Ortiz's testimony credible. Based upon the totality of the circumstances, there was reasonable suspicion for him to stop the vehicle. The unrecognized older vehicle with new plates, driving at a time of day when there is very little traffic, recently observed traveling in the opposite direction by another agent, erratic driving, and in an area high in traffic for narcotics and human smuggling coupled with Agent Ortiz's years of experience support a finding of reasonable suspicion. As such, Agent Ortiz provided specific articulable facts to suspect criminal activity sufficient to support reasonable suspicion justifying the stop.

### III.   CONCLUSION

The Court finds that reasonable suspicion supported the stop of Defendant. As such, the stop was constitutional, and the motion to suppress should be denied.

### IV.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Defendant Candace Rae Ventura's Motion to Suppress Evidence for Lack of Reasonable Suspicion (Doc. 41).

Written objections shall be served and filed **on or before April 15, 2016**. Any response to a party's objections shall be served and filed **on or before April 22, 2016**. No reply shall be filed unless leave is granted from the District Judge. If objections are filed, the parties should use the following case number: **CR-15-01198-TUC-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 8th day of April, 2016.

                                        Honorable Bruce G. Macdonald
                                        United States Magistrate Judge